# Exhibit 6

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| **Somerville School District,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**U.S. Department of Education,** *et al.*,<br><br>Defendants. | **Civil Case No. 1:25-cv-10677** |

**DECLARATION OF EMMA LEHENY**

I, Emma Leheny, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1.      I am over eighteen years old, of sound mind, and fully competent to make this declaration. I also have personal knowledge of the factual statements contained herein.

2.      I served as Acting General Counsel and Principal Deputy General Counsel in the Office of the General Counsel at the U.S. Department of Education. I served in both of those positions from January 20, 2021 to October 6, 2021, and then as Principal Deputy General Counsel through May 2022.

3.      OGC's statutory mission is to "provide legal assistance to the Secretary concerning the programs and policies of the Department."

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

## The Office of The General Counsel

4.      As Acting General Counsel, I was responsible for overseeing the Office of the General Counsel (OGC) at the U.S. Department of Education in every respect. I worked directly with the staff and managing counsel in each of OGC's divisions. Those attorneys regularly briefed me on specific projects, presenting recommendations for decisions I made. In addition, I would frequently reach out to individual career attorneys to assist me in providing advice to other agencies or offices on issues within the attorneys' specialty. In most cases, I could not have made a fully informed decision without the input of career counsel. Specializing in complex areas of law unique to the Department and drawing from deep experience, career attorneys provided essential advice that I could not have replicated by hiring or consulting attorneys outside of OGC. In addition to the briefings specific to a particular project or case, I received daily briefings to keep me current on the work of OGC generally. Then as Principal Deputy General Counsel, I assisted the General Counsel in carrying out the duties described above. This included participating in many of the same briefings and maintaining a familiarity with the work of all attorneys in OGC.

5.      During my tenure as Acting General Counsel and Principal Deputy General Counsel, OGC consisted of approximately 120 full-time career employees and OGC was organized into seven divisions. Each division reported to a career Assistant General Counsel; the seven divisions then reported to one of three Deputy General Counsel, who reported directly to the General Counsel or Acting General Counsel. In both of my roles, I interacted daily with counsel at all levels in OGC.

The OGC divisions were:

2

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

a.  The Division of Elementary, Secondary, Adult, and Vocational Education

(DESAVE)

b.  The Division of Educational Equity (DEE)

c.  The Division of Legislative Counsel (DLC)

d.  The Ethics Division (Ethics)

e.  The Division of Regulatory Services (DRS)

f.  The Division of Business and Administrative Law (DBAL)

g.  The Division of Postsecondary Education (DPE)

6.    During my tenure, the attorneys in these divisions performed the following types of work:

a.  The Division of Elementary, Secondary, Adult and Vocational Education advised

on all matters related to elementary and secondary education, including Title I of

the Elementary and Secondary Education Act (ESEA) and Perkins Career and

Technical Education. This work included consulting on a daily basis (or multiple

times per day) with the staff across the Department who operated these programs

via phone, email, and in person; reviewing emails from the program staff to states

and school districts (and other grantees and subgrantees); reviewing and revising

published Frequently Asked Questions documents or other informal, written

guidance documents; reviewing and revising scripts or talking points for

webinars; advising on the wide range of legal requirements for states and school

districts; reviewing Notices Inviting Applications (NIAs), which provide grant

application requirements and guidance; and reviewing grant applications, grant

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

award letters, and all other formal communication with grantees. In addition, this division worked with the Department of Justice (DOJ) to represent the Department in any administrative proceedings related to K-12 issues, especially grants (such as administrative challenges to withholding or terminating grants), and to advise on any litigation involving the Department regarding K-12 matters.

b. <u>The Division of Educational Equity</u> advised on all matters related to student civil rights and equitable access to education services, including rights arising under the Individuals with Disabilities Education Act (IDEA), all IDEA grant programs implementing the IDEA, and all statutes enforced by the Office for Civil Rights (OCR), including Title VI of the Civil Rights Act, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act, and the Age Discrimination Act. This work included consulting with the relevant staff across the Department on a daily basis (or multiple times per day basis) on the phone, over email, or in person regarding ongoing civil rights enforcement matters; reviewing and revising all civil rights regulations in all stages of the drafting process; reviewing and revising all informal guidance regarding civil rights in all stages of the drafting process; coordinating closely with OCR and DOJ to advise on issues that could become subject to litigation or were subject to litigation; and advising on civil rights related grant matters—such as reviewing grant applications and reviewing grant award letters—including all aspects of IDEA grant making as well as other grants across the Department that implicated civil rights issues.

4

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

c.  The Division of Legislative Counsel reviewed education-related legislation

pending in Congress and coordinated with Department staff to provide written

formal and verbal advice to the Department's Office of Legislation and

Congressional Affairs (OLCA) and the government-wide Office of Management

and Budget (OMB) on legislation related to education.

d.  The Ethics Division ran the Department-wide ethics program. This involved

advising individual officials across the Department on their ethics obligations,

through phone calls, emails, in-person meetings, individual consultations,

guidance documents, webinars, and similar. This included advice to the most

senior officials at the Department, including the Secretary, on their ethical

obligations. Ethics Division attorneys, under the supervision of the Designated

Agency Ethics Official (who was the Assistant General Counsel of the Ethics

Division), were the only officials authorized to grant particular kinds of ethics

waivers, approval for outside activities, and other such permissions. The Ethics

Division attorneys also reviewed all mandated public ethics disclosures (such as

Office of Government Ethics 278 forms for officials at certain levels of seniority)

and private ethics disclosures, and individually advised all personnel across the

Department on these disclosures.

e.  The Division of Regulatory Services advised on and reviewed all regulations

across the Department, all related legal guidance (such as Dear Colleague Letters

and Frequently Asked Questions documents), was responsible for all documents

published in the Federal Register (for both rulemaking and grants), and advised

on all other regulatory issues. This included advising program staff across the

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

entire Department through phone calls, emails, and in-person meetings; reviewing and revising multiple drafts of all documents; consulting with DOJ on regulatory issues likely to arise in litigation (such as Administrative Procedure Act challenges to regulations and informal guidance) and such issues raised in active litigation.

f.  The Division of Business and Administrative Law provided legal services to Department officials concerning all business management and administrative activities throughout the Department. This included reviewing draft contracts between the Department and a wide range of parties for any services used by the Department. DBAL also represented the Department in administrative proceedings challenging contract matters. DBAL was also the division that advised on internal human resources matters, such as advising on employment and labor issues, including individual advising to managers, advising Department-wide Human Resources on appropriate employment labor practices, drafting and reviewing internal Department policies on hiring, interns, Equal Employment Opportunities complaint processes, and other employment and labor policies, as well as representing the Department in all administrative proceedings related to labor and employment, including before the Federal Labor Relations Authority (FLRA) and other administrative bodies. This division also advised program staff across the Department through phone calls, emails, and in-person meetings on matters related to intellectual property, including copyrights, trademarks, and public-private partnerships. This division also advised on privacy matters, including the Privacy Act and the Family Educational Rights and Privacy Act

6

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

(FERPA). The privacy attorneys advised the Department's Student Privacy Policy

Office, which enforces FERPA, on all enforcement matters; and reviewed and

revised all regulations, informal guidance, and letters regarding FERPA. The

privacy attorneys also advised the entire Department on compliance with privacy

laws with respect to any data collection and storage, especially when sharing any

information with other agencies and protecting student loan data held by Federal

Student Aid as well as data held by OCR.

g.  The Division of Postsecondary Education provided legal services for

postsecondary education programs, including but not limited to the Federal

Student Aid program, the Office of Postsecondary Education and the Office of the

Undersecretary.

7.      Based on my experience as Acting General Counsel and Principal Deputy General

Counsel, attorneys performed their work by providing direct legal advice to the teams around the

Department of Education operating each program. This advice was often given live on the phone,

during in-person meetings, over email, or through the process of reviewing and collaboratively

revising documents. In my experience, this legal advice was typically applied to specific

questions, concerns, or scenarios that arose in the context of a particular grant program,

regulation, question from a state or school district, or similar. Those specific questions were

handled by attorneys with the corresponding expertise. Each division of OGC required expertise

in a distinct legal specialty such that attorneys from different divisions could not easily

accomplish one another's work. No handbook or guide could replace the work, or even a type of

work, performed by any of the OGC divisions.

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

8.      In my experience, the attorneys in OGC had deep subject matter expertise and institutional knowledge that allowed them to do their job well. At least one of the attorneys had been in OGC since before the Department of Education was separated from the Department of Health, Education, and Welfare in 1979. Several attorneys had served in OGC for decades. Most of the career Assistant General Counsels in OGC had served at the Department for over a decade. They had deep subject matter expertise in areas of law specific to the Department and the many programs it operates, all of which are authorized under different and complex statutory schemes.  This knowledge is not easily replaceable by generalist attorneys, nor can the knowledge of the legal framework for specific Department programs easily be learned by attorneys in other parts of OGC or in other federal agencies. For example, in my experience, an attorney who advises on privacy issues related to the Free Application for Federal Student Aid (FAFSA) does not have the expertise to advise on grant programs under the ESEA, nor could they quickly acquire that expertise.

9.      In my experience when I served as Acting General Counsel and Principal Deputy General Counsel, the OGC career attorneys' work was essential to the Department performing its statutorily required functions. For example, the Department is charged by Congress with the distribution of federal education funds to states, for the purpose of supporting local districts and schools. This is not a discretionary function or a broadly defined mandate to the Department. It is set forth in statutory and regulatory terms that are highly specific and not easily interpreted using general legal principles. In addition to deep experience interpreting these authorities, OGC attorneys have established lines of communication with state administrators, an understanding of states' expectations and knowledge base, and familiarity with longtime Department practices with respect to all

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

education grants. Without the technical assistance provided by OGC lawyers, these state agencies will be impeded in their ability to deliver federal funds, including funds appropriated in accordance with IDEA and ESEA, to local schools efficiently and on the correct bases. State educational agencies rely on the continuous, nuanced, and expert advice of OGC attorneys to efficiently manage federal education funds. Without OGC attorneys, states will come to varied, contradictory, and in some cases, inaccurate interpretations of the terms of federal education funding, creating a natural basis for litigation by students and school districts.

10.    The same can be said of attorneys in each of the OGC divisions.  Without legal advice from specialized OGC attorneys, for example, the Federal Student Aid Office (FSA) will be impeded in its ability to effectively manage the contracts for the FAFSA and loan servicers, which must operate in accordance with highly specific federal authorities. Without the support of expert OGC attorneys, individual Department officials will be impeded in their ability to comply with detailed disclosure requirements. In my experience, OGC attorneys assisted the Department in virtually all aspects of the Department's work. OGC's legal work is not performed mainly for the purpose of minimizing legal exposure, as is true of some general counsel work in the private sector. Nor is it performed only occasionally or under unusual circumstances. The Department's key mandates, at their core, require legal analysis and ongoing legal support and advice.

11.    As Acting General Counsel and Principal Deputy General Counsel, I also relied on the institutional knowledge and subject matter expertise of experienced OGC attorneys to be able to provide legal advice to the Secretary of Education and senior officials across the Department.

*Privileged & Confidential*
*Attorney Work Product*
*Democracy Forward Foundation*

12.    My understanding is that every single person in every division in the Office of the

General Counsel was notified March 11, 2025 that they would be fired *en masse*, except for one

Deputy General Counsel, attorneys in the Division of Postsecondary Education, and possibly a

couple of other attorneys.

13.    In other words, my understanding is that every single employee in each of the following

divisions was notified that they would be fired: the Division of Elementary, Secondary, Adult,

and Vocational Education; the Division of Educational Equity; the Division of Legislative

Counsel; the Ethics Division; the Division of Regulatory Services; and the Division of Business

and Administrative Law.


Washington, D.C.                                    */s/ Emma Leheny*
March 31, 2025                                      EMMA LEHENY