## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SOMERVILLE PUBLIC SCHOOLS, EASTHAMPTON PUBLIC SCHOOLS, AMERICAN FEDERATION OF TEACHERS, AMERICAN FEDERATION OF TEACHERS MASSACHUSETTS, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, and SERVICE EMPLOYEES INTERNATIONAL UNION,<br><br>   Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, LINDA MCMAHON, in her official capacity as Secretary of Education, and U.S. DEPARTMENT OF EDUCATION,<br><br>   Defendants. | Case No. 1:25-cv-10677 |

## REPLY IN SUPPORT OF PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES .................................................................................................... ii

TABLE OF ABBREVIATIONS ............................................................................................... v

TABLE OF DOCKET LINKS ................................................................................................. vi

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.      Plaintiffs Have Demonstrated Ongoing Irreparable Harm to Pursue Ripe Claims ............ 1

        A.      Plaintiffs Have Standing Because They Are Being Irreparably Harmed
                Right Now ....................................................................................................... 1

        B.      Plaintiffs' Claims Are Ripe .............................................................................. 4

II.     Plaintiffs Are Likely to Succeed on the Merits Because the Mass Termination
        Order is a Final Agency Action that Violates the APA ....................................................... 5

        A.      The Mass Termination Order is Subject to APA Review ...................................... 5

        B.      The Mass Termination Order Violates the APA .................................................... 9

III.    The Remedies Plaintiffs Seek Are Squarely Within a District Court's Authority ........... 11

        A.      Plaintiffs' Claims Cannot be Channeled to the MSPB or FLRA ........................ 11

        B.      Plaintiffs' Requested Relief is Appropriately Tailored ........................................ 13

IV.     The Irreparable Harm to Plaintiffs and the Public Weigh in Favor of Granting
        Preliminary Relief ............................................................................................................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action All. of Senior Citizens of Greater Phila. v. Heckler*,
    789 F.2d 931 (D.C. Cir. 1986) ................................................................................................3

*AFGE v. U.S. Off. of Pers. Mgmt.*,
    2025 WL 900057 (N.D. Cal. Mar. 24, 2025).........................................................................13

*Axon Enter., Inc. v. FTC*,
    598 U.S. 175 (2023)..........................................................................................................7, 12

*Bennett v. Spear*,
    520 U.S. 154 (1997)................................................................................................................5

*Blackman v. Dist. of Columbia*,
    185 F.R.D. 4 (D.D.C. 1999)................................................................................................14

*Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*,
    622 F.3d 36 (1st Cir. 2010).................................................................................................14

*Camp v. Pitts*,
    411 U.S. 138 (1973)...............................................................................................................9

*City & Cnty. of San Francisco v. Trump*,
    897 F.3d 1225 (9th Cir. 2018) ............................................................................................10

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001) ..........................................................................................10

*Crowley v. Local 82, Furniture & Piano Moving*,
    679 F.2d 978 (1st Cir. 1982)...............................................................................................15

*de Feyter v. FAA*,
    No. 10-CV-358, 2011 WL 1134657 (D.N.H. Mar. 25, 2011) .................................................9

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019).......................................................................................................8, 9, 10

*Drake v. FAA*,
    291 F.3d 59 (D.C. Cir. 2002) ............................................................................................8, 9

*Drs. for Am. v. OPM*,
    No. 1:25-cv-00322, 2025 WL 452707 (D.D.C. Feb. 11, 2025).................................................3

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ...............................................................................................................11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) .............................................................................................................3

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................................................4, 9

*HIAS, Inc. v. Trump*,
    985 F.3d 309 (4th Cir. 2021) ............................................................................................11

*Hochendoner v. Genzyme Corp.*,
    823 F.3d 724 (1st Cir. 2016) ...............................................................................................4

*John T. v. Delaware County Intermediate Unit*,
    2000 WL 558582 (E.D. Pa. May 8, 2000) .......................................................................15

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ..............................................................................................15

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .............................................................................................................9

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) .............................................................................................................7

*Mach Mining, LLC v. EEOC*,
    575 U.S. 480 (2015) ........................................................................................................7, 8

*Maine v. United States Dep't of Agric.*,
    No. 1:25-cv-00131, 2025 WL 1088946 (D. Me. Apr. 11, 2025) .....................................15

*Mass. v. Nat'l Institutes of Health*,
    2025 WL 702163 (D. Mass. Mar. 5, 2025) ........................................................................5

*McInnes-Misenor v. Me. Med. Ctr.*,
    319 F.3d 63 (1st Cir. 2003) .................................................................................................5

*McKenna v. Department of Interior*,
    996 F.2d 1235 (Fed. Cir. 1993) ..........................................................................................4

*Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*,
    463 U.S. 29 (1983) ............................................................................................................10

*Nantucket Wine & Food Festival, LLC v. Gordon Companies, Inc.*,
    No. 1:24-cv-11640, 2024 WL 5442374 (D. Mass. Dec. 12, 2024) ..................................14

*Nat'l Treasury Emps. Union v. Vought*,
    Civ. No. 25-cv-381, 2025 WL 942772 (D.D.C. Mar. 28, 2025) ..............................................6

*PFLAG, Inc. v. Trump*,
    No. 25-cv-337, 2025 WL 685124 (D. Md. Mar. 4, 2025) ......................................................10

*Project Veritas Action Fund v. Rollins*,
    982 F.3d 813 (1st Cir. 2020)......................................................................................................5

*Risteen v. Youth for Understanding, Inc.*,
    245 F. Supp. 2d 1 (D.D.C. 2002) ............................................................................................15

*Roe v. Mayorkas*,
    No. 22-CV-10808-ADB, 2023 WL 3466327 (D. Mass. May 12, 2023) ................................10

*Thunder Basin Coal Co. v. Reich*,
    510 U.S 200 (1994)..............................................................................................................11, 12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................................................................3

*U.S. Off. of Pers. Mgmt. v. AFGE*,
    No. 24A904, 2025 WL 1035208 (U.S. Apr. 8, 2025)..............................................................13

*Union of Concerned Scientists v. Wheeler*,
    954 F.3d 11 (1st Cir. 2020)....................................................................................................8, 9

*United States v. Fausto*,
    484 U.S. 439 (1988)................................................................................................................11

*United Steelworkers of Am. v. Textron, Inc.*,
    836 F.2d 6 (1st Cir. 1987).......................................................................................................15

**Statutes**

5 U.S.C. § 551(13) .............................................................................................................................6

5 U.S.C. § 701(a)(2)...........................................................................................................................7

5 U.S.C. § 704 ...................................................................................................................................5

5 U.S.C. § 706(2) .............................................................................................................................14

5 U.S.C. § 7105(a)(2) .......................................................................................................................13

5 U.S.C. § 7511................................................................................................................................12

5 U.S.C. § 7701................................................................................................................................12

## TABLE OF ABBREVIATIONS

Administrative Procedure Act............................................................................................ APA

American Association of University Professors .......................................................AAUP

American Federation of State County and Municipal Employees Council 93 ................ AFSCME

American Federation of Teachers ...........................................................................AFT

American Federation of Teachers Massachusetts .......................................................AFT

Department of Education Organization Act .......................................................... DEOA

Office for Civil Rights ........................................................................................... OCR

Service Employees International Union ...................................................................SEIU

## TABLE OF DOCKET LINKS

Plaintiffs' Brief in Support of Motion for Preliminary Injunction .................................Doc No. 26

Department Press Release Announcing Mass Terminations ......................................Doc No. 27-1

Department Organizational Charts Showing Offices Eliminated..............................Doc No. 27-2

AFGE Spreadsheet of Bargaining Unit Employees Eliminated ..................................Doc No. 27-3

Declaration of Dr. Elizabeth Linos .........................................................................Doc No. 27-5

Declaration of Emma Leheny ...................................................................................Doc No. 27-6

Declaration of Dr. Rubén Carmona .........................................................................Doc No. 27-7

Declaration of Maureen Binienda.............................................................................Doc No. 27-9

Declaration of Dr. Rachel Monarrez.......................................................................Doc No. 27-10

Declaration of Daniel McNeil...................................................................................Doc No. 27-11

Declaration of Jessica Tang .....................................................................................Doc No. 27-12

Declaration of Steven Ury .......................................................................................Doc No. 27-13

Declaration of Dr. Todd Wolfson ............................................................................Doc No. 27-14

Declaration of Robert J. Van Campen .....................................................................Doc No. 27-15

Defendants' Opposition Brief....................................................................................Doc No. 38

## INTRODUCTION

Notwithstanding many public statements about closing the Department of Education, Defendants assert that they are in the midst of a routine department reorganization—which they assert is not reviewable by any court. The Department of Education ("Department") was created by statute, which also circumscribes the Secretary's authority to reorganize what Congress created. Moreover, numerous subsequent statutes require the Department to operate specific programs. Defendants have no authority to disregard these statutes, whether by announcing they will not comply with the law, by firing all of the staff who perform the work necessary to comply with the law, or by any other means. And as with any other final agency action, this Court is empowered under the Administrative Procedure Act ("APA") to review whether the agency's action is lawful. Here, the Mass Termination Order is an openly unlawful effort to close Department by gutting it. Plaintiffs have identified concrete, irreparable harms that they are already experiencing from the Department's closure-in-all-but-name effectuated by the Mass Termination Order. Plaintiffs seek straightforward, narrowly tailored relief: a preliminary injunction restoring the status quo while Defendants propose a reorganization that is not arbitrary, capricious, or otherwise unlawful.

## ARGUMENT

### I.    Plaintiffs Have Demonstrated Ongoing Irreparable Harm to Pursue Ripe Claims

#### A.    Plaintiffs Have Standing Because They Are Being Irreparably Harmed Right Now

Defendants are wrong in asserting that Plaintiffs' harms are "speculative," "inarticulable," and insufficiently concrete to support an injury-in-fact. (Doc No. 38. at 9-10).

The harms to Plaintiffs' organizational missions from the uncertainty around federal funding are neither speculative nor inarticulable—"[t]hey are real. And they are already happening." (Doc No. 27-7 ¶ 48). The mission of School District Plaintiffs is to foster high-quality

education for students. *See* (Doc. No. 27-7 ¶ 4); (Doc No. 27-10 ¶ 5).[1] The mission of Union Plaintiffs is to support educational professionals. (Doc. No. 27-11 ¶ 7); (Doc. No. 27-13 ¶ 3); (Doc No. 27-14 ¶ 6); (Doc No. 27-15 ¶ 4). Loss of federal funds, technical assistance, and other support from the Department is deeply damaging to both Plaintiff groups. *See, e.g.*, (Doc No. 27-7 ¶¶ 44-47); (Doc No. 27-9, ¶¶ 14-15, 26-29, 32-33, 38-39); (Doc No. 27-10 ¶¶ 11-19, 25-31); (Doc No. 27-11 ¶¶ 15-19, 26-28); (Doc No. 27-13 ¶¶ 6-9, 15-23); (Doc No. 27-14 ¶¶ 10-14).

The Mass Termination Order has gutted key offices that deliver federal funding to School District Plaintiffs. *See, e.g.*, (Doc. No. 27-2 at 8, 12, 13, 14); (Doc No. 27-3). This creates uncertainty *right now* about whether funding will be delayed, which causes harm *right now*. (Doc No. 27-5 at 11); (Doc No. 27-7 ¶¶ 43-44); (Doc No. 27-9 ¶¶ 21-22); (Doc No. 27-10 ¶¶ 38, 40). Decisions to hire staff and plan programs dependent on federal funds must be made months in advance. (Doc No. 27-7 ¶ 44); (Doc No. 27-9 ¶ 22); (Doc No. 27-10 ¶ 40). When the amount or timeliness of that funding is uncertain—like now—schools must dip into locally funded operational budgets to ensure the continuity of statutorily required programming (like special education), *see* (Doc No. 27-10 ¶¶ 19-20), leaving school districts with no choice but to cut personnel, programs, and increase class sizes, (Doc No. 27-7 ¶¶ 42, 44); (Doc No. 27-9 ¶ 23); (Doc No. 27-10 ¶¶ 39-40). Already—right now—School District Plaintiffs are facing decisions about whether to cut summer programming and staff for the 2025-26 school year because of the Mass Termination Order. (Doc No. 27-7 ¶ 48); (Doc No. 27-9 ¶ 29); (Doc No. 27-10 ¶ 40). School District Plaintiffs are already losing access to technical support that they rely on to operate their programs. (Doc No. 27-10 ¶¶ 37-38) (unable to obtain necessary information from the

---

[1] *See also About Us*, Easthampton Public Schools, https://www.epsd.us/about/about-us (last visited Apr. 11, 2025).

Department); State Ex. 13 ¶¶ 44-45, 67, 75 (calls and emails to the Department go unanswered); State Ex. 29 ¶¶ 9-17, 21-23, 25 (similar).

There is nothing insufficiently concrete about the harms that Defendants' Mass Termination Order will cause to Plaintiffs in the future either. School District Plaintiffs have identified specific funding sources, technical assistance, and other support that they rely on from the Department. *See, e.g.*, (Doc No. 27-7 ¶¶ 8-30); (Doc No. 27-9 ¶¶ 7-15, 30-39); (Doc No. 27-10 ¶¶ 10-18, 22, 25-31). Plaintiffs' expert in public administration, Dr. Linos, explains how and why the Mass Termination Order "will almost certainly" impair the Department's ability to perform core, statutorily required functions. (Doc No. 27-5 at 2). These harms are directly traceable to the Mass Termination Order through "a predictable chain of events." *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385, 385 n.2 (2024); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (noting that injunctive relief is appropriate where a harm "is sufficiently imminent and substantial"). It is foreseeable, indeed inevitable, that firing the staff who perform the work upon which Plaintiffs rely will cause delays and disruptions that will harm Plaintiffs and "negatively affect the American public." (Doc No. 27-5 at 2); *see* (Doc No. 27-6 ¶¶ 6-7, 9, 12-13); (Doc No. 26 at App. 1); State Ex. 66 ¶¶ 6-7.

So too is it inevitable that the loss of access to technical assistance, resources, and data from the Department will require School District Plaintiffs to divert their limited time and energies into attempting to reproduce that support. (Doc No. 27-7 ¶¶ 28-30); (Doc No. 27-9 ¶¶ 30-33); (Doc No. 27-10 ¶¶ 24-31); *see Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 937-38 (D.C. Cir. 1986) (an organization suffered a cognizable injury when the government cut off a "generous flow of information" that informed the organization's services); *cf. Drs. for Am. v. OPM*, No. 1:25-cv-00322, 2025 WL 452707, at *4 (D.D.C. Feb. 11, 2025) ("These doctors'

time and effort are valuable, scarce resources, and being forced to spend them elsewhere makes their jobs harder and their treatment less effective.").

The Mass Termination Order also poses economic and professional harms to the Union Plaintiffs' members. Numerous AFT, AFT-MA, AFSCME, and SEIU members have jobs that depend on federal funding, and their members rely on technical assistance, such as resources recommended by the Department's "What Works Clearinghouse" and guidance on applying for and repaying federal student aid. *See* (Doc No. 27-11 ¶¶ 10, 28, 77-79); (Doc No. 27-13 ¶¶ 8-9, 16, 17-23); (Doc No. 27-12 ¶¶ 11, 14); (Doc No. 27-15 ¶¶ 8, 17-18); (Doc No. 27-14 ¶¶ 10-14). Loss of employment carries the additional loss of healthcare benefits for union members. (Doc No. 27-13 ¶ 16); (Doc No. 27-12 ¶18).

In response to these facts, Defendants offer conclusory statements that statutorily mandated functions will continue, *see* (Doc No. 38 at 2-3), which carry no weight in response to Plaintiffs' evidence of injury. And they argue that the Plaintiffs' harms cannot be cognizable if the agency's action is lawful. (Doc No. 38 at 10) (citing *McKenna v. Department of Interior*, 996 F.2d 1235 (Fed. Cir. 1993) (unpublished)). But that goes to the merits; not standing. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."). Regardless, even discretionary agency actions must be lawful. *Heckler v. Chaney*, 470 U.S. 821, 833 (1985) ("Congress did not set agencies free to disregard legislative direction.").

### B.    Plaintiffs' Claims Are Ripe

Plaintiffs' claims are ripe because Plaintiffs are experiencing harm now and because the basic facts necessary to adjudicate this dispute have already occurred. To determine ripeness, a court considers whether "resolution of the challenge depends upon facts that may not yet be sufficiently developed" and "whether the challenged action creates a direct and immediate

dilemma for the parties." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 825 (1st Cir. 2020) (cleaned up); *see also Mass. v. Nat'l Institutes of Health*, 2025 WL 702163, at *15 (D. Mass. Mar. 5, 2025) ("[T]he court must ensure the agency action is considered 'final' and thus ripe for review."). Here, Plaintiffs are already being harmed by the gutting of key offices at the Department, thus there is "a direct and immediate dilemma for the parties." *Project Veritas Action Fund*, 982 F.3d at 825; *see supra* at 2-3.

Further, Defendants' assertions that the Department is "not closed" and "will not be closing without congressional action" are irrelevant to whether Plaintiffs' claims are ripe. (Doc No. 38 at 13). As a case upon which Defendants rely explains: "[t]he critical question" for ripeness is "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *McInnes-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003). There is no uncertainty here. Whether Defendants call this a closure, dismantling, or streamlining, the destruction of the Department is underway. The first phase—shedding a critical mass of human capital and expertise—has already taken effect and becomes irreversible in June. (Doc No. 27-1).

## II.    Plaintiffs Are Likely to Succeed on the Merits Because the Mass Termination Order is a Final Agency Action that Violates the APA

### A.    The Mass Termination Order is Subject to APA Review

**Final Agency Action.** The March 11 Mass Termination Order, which reduces agency staffing by nearly half, is a concrete, final agency action that is reviewable under the APA because it "mark[s] the 'consummation' of the agency's decisionmaking process" and is an action "by which 'rights or obligations have been determined'" and "from which 'legal consequences [have] flow[ed].'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted). There is nothing "preliminary" or "procedural" about the Order, 5 U.S.C. § 704, despite Defendants' assertions otherwise, (Doc. No. 38 at 17-18). Indeed, the employees subject to the Mass Termination Order

are already on administrative leave, and Plaintiffs are already being harmed due to the gutting of key offices. *See* (Doc. No. 26 at 5-15). It is hard to imagine how termination orders that have already been effectuated and caused legal consequences for Plaintiffs are "preliminary" rather than a "consummation" of the agency's decisionmaking process.

Moreover, what Plaintiffs here actually challenge is a "discrete agency action," rather than a "wholesale challenge" to agency programs, despite Defendants' arguments to the contrary. (Doc. No. 38 at 15-16). The Mass Termination Order is a single, discrete order qualifying as agency action under the APA. *See* 5 U.S.C. § 551(13) (defining "agency action" to include an "order"); *id*. § 551(6) (defining "order" to mean "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making"). Defendants cannot transform this suit into a "programmatic" challenge by asking the Court to review each office-level decision individually. *See Nat'l Treasury Emps. Union v. Vought*, Civ. No. 25-cv-381, 2025 WL 942772, at *9 (D.D.C. Mar. 28, 2025) (holding that "Defendants' repeated incantation of the words 'programmatic' and 'abstract' cannot change the character of what is actually going on," and finding stop-work order to be a "discrete order" that is "ripe for review") *stayed in part on other grounds pending appeal*, Case No. 25-5091 (D.C. Cir. Apr. 11, 2025). What Defendants label individual actions are actually the results that flowed directly from the Mass Termination Order, such as "elimination of some non-statutorily required organizational components, reassignments of tasks, transfers of functions, redirection of priorities, and reductions of staff in certain offices." (Doc. No. 38 at 16). Defendants do not contest that these changes are the result of the Mass Termination Order, nor do they identify any other orders that could be the basis for these supposedly individual actions. Indeed, accepting Defendants' argument would render any agency action that has widespread effects an unreviewable "programmatic"

challenge—but APA review cannot be cast aside so easily. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175, 186 (2023) ("Congress rarely allows claims about agency action to escape effective judicial review.")

This case is also distinguishable from the "programmatic" challenges in cases like *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990). In *Lujan*, the Court rejected a challenge to the Bureau of Land Management's "land withdrawal review program" because that phrase "does not refer to a single BLM order or regulation," but rather was the name the plaintiffs gave ongoing public lands operations consisting of "1,250 individual decisions." *Id.* at 890. For example, the *Lujan* plaintiffs alleged violations such as a "failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, inordinate focus upon mineral exploitation, failure to provide required public notice, [and] failure to provide adequate environmental impact statements." *Id.* at 891. But here, Defendants' Mass Termination Order is one specific order: the agency announced it as such, (Doc. No. 27-1), sent identical notices to all affected employees, *e.g.*, State Ex. 68, at Ex. 1, and described it as such publicly, *see* State Ex. 6. Defendants cannot evade judicial review by claiming that their actions are too complex and wide-ranging to be final agency action, while also claiming that reviewing office-level decisions would result in the Court inappropriately "superintend" the Department. (Doc. No. 38 at 1).

**Committed to Agency Discretion by Law.** The APA provides a "'strong presumption' favoring judicial review of administrative action" because "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (citation omitted). Thus, the APA's exception for actions "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) is "quite narrow," and applies only in circumstances such as those where courts lack any "meaningful standard" to apply. *Union of Concerned Scientists v.*

*Wheeler*, 954 F.3d 11, 17–18 (1st Cir. 2020) (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019)). Even statutes granting "broad authority" and allowing the agency to determine "form and content" of an action are not sufficient for the exception to apply. *Id.* (quoting *Dep't of Commerce*, 588 U.S. at 771-72). Thus, Defendants bear "a heavy burden in attempting to show that Congress prohibit[ed] *all* judicial review" of the Mass Termination Order and committed it wholly to the Department's discretion by statute. *Mach Mining*, 575 U.S. at 486 (internal quotation marks omitted) (emphasis added).

Defendants fall far short of meeting that burden. Defendants lack the authority to destroy a Department created by Congress. In fact, Defendants' authority to merely reorganize the Department is circumscribed by statute, including by the Department of Education Organization Act, 20 U.S.C. § 3473, and by the numerous subsequent statutes requiring the Department (and particular offices within it) to carry out certain functions. *See* (Doc. No. 26 at 3-5, 20-21). This is a far cry from the type of boundless discretion that Defendants need to rebut the presumption of reviewability as a whole, or to credibly argue that it can do through the Mass Termination Order what it is not permitted to do directly. *See Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) (holding that "§ 701(a)(2) encodes the principle that an agency cannot abuse its discretion . . . where its governing statute confers such broad discretion as to essentially rule out the possibility of abuse").[2]

The cases Defendants cite either support Plaintiffs' position or are inapposite. Nowhere in *Markland v. OPM*—a non-APA case—did the Federal Circuit conclude that the agency's discretion to institute a RIF was unreviewable; to the contrary, the court reviewed that RIF's legality. 140 F.3d 1031, 1033 (Fed. Cir. 1998). In *Wheeler*, the First Circuit *reversed* the district

---

[2] Nor can Defendants escape judicial review under the even narrower exception to reviewability for Presidential acts. *See* (Doc No. 38 at 21). Plaintiffs here have not sought any preliminary relief against the President; the Motion for Preliminary Injunction is only against agency Defendants.

court's conclusion that the relevant statute failed to provide judicially manageable standards. 954 F.3d at 19-20. And *Heckler*, *de Feyter*, and *Drake* each involved "an agency's decision not to prosecute or enforce," which is "committed to an agency's absolute discretion," which makes that precedent irrelevant here. *Heckler*, 470 U.S. at 831.[3] *Lincoln* presented "another administrative decision traditionally regarded as committed to agency discretion": the "allocation of funds from a lump-sum appropriation" that imposed no "legally binding restrictions." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). That scenario is unlike the statutory mandates the Mass Termination Order flouts. Indeed, *Lincoln,* supports Plaintiffs: because Congress has specifically "circumscribe[d] agency discretion to allocate resources" here, the Department "is not free simply to disregard [its] statutory responsibilities," and its attempt to do so is subject to APA review. *Id.* at 193.

B.    **The Mass Termination Order Violates the APA**

Plaintiffs are likely to succeed on the merits of their APA claims. *See* (Doc. No. 26 at 16-24). Defendants failed to engage in "reasoned decisionmaking," and therefore the Mass Termination Order must be vacated. *Dep't of Com.*, 588 U.S. at 773 (citation omitted); (Doc. No. 26 at 17-20). If an agency offers even a curt explanation "indicat[ing] the determinative reason for the final action taken," the agency's decision must "stand or fall on the propriety of that finding." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam). Defendants concede the Secretary's March 11, 2025 justification for the Mass Termination Order was "cursory." (Doc. No. 38 at 25); *see* (Doc. No. 27-1). This alone is sufficient to hold unlawful and set aside the agency's action. *Motor*

---

[3] *See also Drake*, 291 F.3d at 70; *de Feyter v. FAA*, No. 10-CV-358, 2011 WL 1134657, at *4 (D.N.H. Mar. 25, 2011). Defendants' argument that Plaintiffs' claims implicate the Office for Civil Rights' (OCR) enforcement discretion, (Doc. No. 30 at 20, 25), is a red herring. Plaintiffs do not challenge any specific instance of non-enforcement by OCR; rather, Plaintiffs argue that OCR's wholesale gutting makes it impossible for it to properly complete its statutorily mandated functions. (Doc No. 26 at 20).

*Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*, 463 U.S. 29, 43 (1983).[4]

But here, Defendants' reasoning fails for an additional reason: it is a *post hoc* rationalization. "If judicial review is to be more than an empty ritual, it must demand something better" than "contrived" reasoning; to require otherwise would "defeat the purpose of the enterprise." *Dep't of Com.*, 588 U.S. at 785. Here, Defendants do not contest that their goal is to close the Department (which they concede is unlawful absent Congressional authorization). *See* (Doc. No. 38 at 1). Nor could they—the President and the Secretary have said so publicly and repeatedly. *See, e.g.*, (Doc. No. 27-1); State Ex. 71-3. Yet Defendants assert, in litigation, that the Mass Termination Order simply "reflects a decision" that the Department should be "streamlined and reorganized." (Doc. No. 38 at 18). Defendants cannot have it both ways, and the deference courts owe agencies "does not require courts to turn a blind eye when government officials fail to discharge their duties. *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001).

Nor do non-specific assurances in the Press Release announcing the Mass Termination Order that the Department will follow the law convert an unlawful action to a lawful one. *See* (Doc. No. 38 at 23); (Doc. No. 27-1) (The Department "will continue to deliver on all statutory programs that fall under the agency's purview[.]"). A generic, unsubstantiated assertion that a challenged action will be completed in a lawful manner does not "preclude[] a court from examining whether the [action] is consistent with law." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018); *see also PFLAG, Inc. v. Trump*, No. 25-cv-337, 2025 WL

---

[4] Given this concession, there exists "good cause" for the Court to order expedited production of the complete administrative record under Fed. R. Civ. P. 26(d)(1). *See Roe v. Mayorkas*, No. 22-CV-10808, 2023 WL 3466327, at *18–19 (D. Mass. May 12, 2023). Defendants note that the cursory nature of the Secretary's reasoning was "unsurprising," (Doc. No. 38 at 25), indicating that the record is sparse, so the "burden of discovery" on Defendants is likely to be slight. *See* (Doc. No. 26 at 16-24).

685124, at *18 (D. Md. Mar. 4, 2025) ("There are no magic words that can override an executive [directive's] plain meaning."). The Secretary cannot simultaneously take actions to shut down the Department as a whole (which Defendants concede would be unlawful), and then evade review by stating that the Department is complying with the law. *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021) (rejecting use of "a purely theoretical savings clause, with no method or standard for invoking it, the application of which would undermine" the substance of the order).

## III.    The Remedies Plaintiffs Seek Are Squarely Within a District Court's Authority

### A.    Plaintiffs' Claims Cannot be Channeled to the MSPB or FLRA

Defendants are wrong that Plaintiffs' claims should be channeled to the Merit Systems Protection Board ("MSPB") or Federal Labor Relations Authority ("FLRA") because Plaintiffs' claims plainly are not "of the type" that Congress intended to be channeled. *See Thunder Basin Coal Co. v. Reich*, 510 U.S 200, 201 (1994) (explaining that parties will only be channeled away from federal court into an administrative remedial scheme if it is "fairly discernible" that Congress intended to do so).

The MSPB and FLRA are limited jurisdiction tribunals that adjudicate claims brought by *federal employees* and *unions representing federal employees* to challenge agency actions affecting their federal employment.[5] Plaintiffs are neither federal employees nor their union

---

[5] *See, e.g.*, *United States v. Fausto*, 484 U.S. 439, 455 (1988) ("The [Civil Service Reform Act ("CSRA")] established a comprehensive system for reviewing personnel action taken against federal employees."); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 6 (2012) (explaining that CSRA gives federal employees "the right to a hearing" before the MSPB). Defendants' claim that CSRA covers not only federal employees and their labor unions, but "other interested parties" as well, is unsupported by any citation. (Doc. No. 38 at 11). The only non-federal employee case Defendants cite to support their argument does not change Plaintiffs' position. In *Maryland v. United States Dep't of Agric.*, the district court granted a preliminary injunction to state attorneys general related to mass federal worker firings, and rejected the government's channeling attempt because CSRA did not apply to the states' distinct claims. 2025 WL 973159, at *15-17 (D. Md. Apr. 1, 2025). In granting a stay pending appeal, the Fourth Circuit held, without explanation, that "[t]he (continued…)

representatives. They are local school districts and teachers' unions that represent educators who work in state and local schools. They do not represent any federal employees at the Department of Education. There is no definition under the CSRA that captures them as parties subject to MSPB or FLRA review processes. *See* 5 U.S.C. § 7511 (listing categories of federal employees covered by MSPB); *id*. § 7701 (permitting appeals to the MSPB from only "an employee, or applicant for employment"); *id.* § 7103(a)(1) (defining a "person" for purposes of the FLRA chapter as "an individual, labor organization, or agency"); *id.* § 7103(a)(4) (defining "labor organization" subject to FLRA review as an organization dealing with an agency on behalf of employees).

Plaintiffs are challenging agency action to dismantle the Department. The fact that Defendants have elected to do this by firing sufficient personnel to incapacitate the Department doesn't change the harms giving rise to Plaintiffs' claims. Thus, Plaintiffs' claims aren't "of the type" covered by the CSRA's remedial scheme, and therefore should not be channeled. *Axon*, 598 U.S. at 188-89 (2023) (quoting *Thunder Basin*, 510 U.S. at 212).

The three factors that courts consider in deciding whether a claim should be channeled to an administrative body, summarized in *Thunder Basin, id. at 186*, compel this conclusion. First, channeling would foreclose "effective judicial review," which Congress "rarely" permits in claims arising from agency action. *Axon*, 598 U.S. at 186. The MSPB is empowered to review appeals of "final adverse action" within in their limited jurisdiction when presented by federal "employee[s], or applicant[s] for employment," and annuitants. *See* 5 U.S.C. § 7701. The FLRA is empowered to adjudicate labor issues between federal employees and agencies, such as issues related to "the

---

Government is likely to succeed in showing the district court lacked jurisdiction over Plaintiffs' claims[.]" *Maryland*, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025). It is unclear on what basis the circuit court decided that the district court lacked jurisdiction and, in any event, the interlocutory summary order carries no precedential value.

duty to bargain in good faith" and "unfair labor practices." *Id.* § 7105(a)(2). Channeling Plaintiffs' claims to a forum that will not hear them would foreclose review.

Second, Plaintiffs' suit is collateral to the CSRA's review provisions. The Mass Termination effectively dismantles the Department by gutting core programs, threatening funding disruptions, and causing loss of technical assistance and other support, with profound effects on school budgets and staff. Those harms are unique to Plaintiffs and are distinct from harms arising directly from the federal employee-employer relationship that the FLRA and MSPB are tasked with reviewing. Said another way, this "distinguishes these claims from others that have attacked, substantively or procedurally, one agency's decision about one employee or its own workforce, which are the kinds of claims appellate courts have channeled into the CSRA." *AFGE v. U.S. Off. of Pers. Mgmt.*, 2025 WL 900057, at *3 (N.D. Cal. Mar. 24, 2025).[6]

Third, Plaintiffs' claims are outside the FLRA's and MSPB's expertise. Plaintiffs challenge the Mass Termination Order as a functional repeal of the statutes creating the Department and its programs. Plaintiffs sue to prevent disruptions of these statutorily required programs, which will result in learning loss, widespread budgetary disruption for school districts, and other harms. These claims are not intertwined with questions related to labor and employment that would benefit from the MSPB's or the FLRA's expertise. *Id.* at *2 ("The [MSPB and FLRA] know[] a good deal about [employment and labor] policy, but nothing special about the separation of powers.").

## B.     Plaintiffs' Requested Relief is Appropriately Tailored

Plaintiffs seek a preliminary injunction preserving the status quo by "hold[ing] unlawful

---

[6] On April 8, 2025, the Supreme Court issued a stay to a preliminary injunction in this case, but that injunction did not apply to the union plaintiffs the government defendants attempted to channel. *See U.S. Off. of Pers. Mgmt. v. AFGE*, No. 24A904, 2025 WL 1035208, at * 1 (U.S. Apr. 8, 2025). As such, the Supreme Court did not pass judgment on the district court's finding that the union plaintiffs cannot be channeled. *Id.*

and set[ting] aside" the Mass Termination Order during the pendency of this proceeding. *See* 5 U.S.C. § 706(2). Plaintiffs do not ask the Court to "superintend" the Department, contrary to Defendants' assertions. (Doc. No. 38 at 1). Thus, Plaintiffs' requested relief is already narrowly tailored: the Court should require that the Department restore and maintain the *status quo* prior to the Mass Termination Order until such a time that the agency reorganizes itself consistent with statutory requirements on its structure, functions, and staff.

## IV.    The Irreparable Harm to Plaintiffs and the Public Weigh in Favor of Granting Preliminary Relief

Whether to grant preliminary relief is decided on a "sliding-scale approach" where the "strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Nantucket Wine & Food Festival, LLC v. Gordon Companies, Inc.*, No. 1:24-cv-11640, 2024 WL 5442374, at *14 (D. Mass. Dec. 12, 2024) (citing *Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 43 (1st Cir. 2010)). Plaintiffs have demonstrated a strong likelihood of success on the merits, and the imminent, devastating, and irreparable harms arising from Defendants' Mass Termination Order also weigh strongly in favor of preliminary relief.

The detriment to Plaintiffs' organizational missions cannot be remedied through retroactive relief. Plaintiffs have a time-limited ability to educate children according to State-established standards.[7] The threatened loss of learning resulting from Defendants' Mass Termination Order will compound: "as students fall behind, it becomes harder to bring them back up." (Doc No. 27-7 ¶ 46); *see Blackman v. Dist. of Columbia*, 185 F.R.D. 4, 7 (D.D.C. 1999) ("While a few months in the life of an adult may be insignificant . . . a few months can make a world of difference in the life of that child.") (citation omitted); *N.D. ex rel. parents acting as guardians ad litem v. Hawaii*

---

[7]    *See, e.g.*, *Current Frameworks*, Mass. Dep't of Elementary and Secondary Ed., https://www.doe.mass.edu/frameworks/current.html (last visited Apr. 11, 2025).

*Dep't of Educ.*, 600 F.3d 1104, 1112-13 (9th Cir. 2010) (affirming finding that teacher furloughs caused irreparable harm); *John T. v. Delaware County Intermediate Unit*, Civ. No. A. 98-5781, 2000 WL 558582 at *8 (E.D. Pa. May 8, 2000) ("Compensation in money can never atone for deprivation of a meaningful education in an appropriate manner at the appropriate time.").

For Union Plaintiffs' members who lose health insurance due to job loss from funding uncertainty, that harm cannot be remedied retroactively. *See United Steelworkers of Am. v. Textron, Inc.*, 836 F.2d 6, 8 (1st Cir. 1987); *Risteen v. Youth for Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) ("The loss of health insurance benefits—particularly for those who are unemployed—constitutes irreparable harm for purposes of a preliminary injunction.").

In "suits to enforce important federal rights or public interests," courts in this circuit follow the practice setting the bond at a nominal amount or waiving it entirely. *Maine v. United States Dep't of Agric.*, No. 1:25-cv-00131, 2025 WL 1088946, at *30 (D. Me. Apr. 11, 2025) (quotations omitted) (citing *Crowley v. Local 82, Furniture & Piano Moving*, 679 F.2d 978, 999-1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984)). Moreover, Defendants are already paying the terminated employees to perform no work through approximately the end of June 2025, *see* State Ex. 71-68 Ex. 1, thus Defendants' concern for the "[t]he cost to the United States [of] the salary and benefits" for these employees is unfounded, (Doc No. 38 at 27-28). Finally, the public interest is best served when the Executive Branch acts lawfully in the way that it pursues the President's policy priorities. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (noting that there is "no public interest in the perpetuation of unlawful agency action").

## CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to a preliminary injunction of the Mass Termination Order.

Dated: April 18, 2025                          Respectfully submitted,


                                               /s/     *Rachel F. Homer*


                                               ***Counsel for Plaintiffs***
                                               Mark B. Samburg (MA State Bar No. 680099)
                                               Rachel F. Homer (MA State Bar No. 693642)
                                               Kali Schellenberg* (MA State Bar No. 694875)
                                               Will Bardwell* (DC Bar No. 90006120)
                                               Elena Goldstein* (NY State Bar No. 4210456)
                                               Victoria Nugent* (DC Bar No. 470800)
                                               Adnan Perwez* (DC Bar No. 90027532)
                                               Democracy Forward Foundation
                                               P.O. Box 34553
                                               Washington, D.C. 20043
                                               Telephone: 202.448.9090
                                               Facsimile: 202.796.4426
                                               msamburg@democracyforward.org
                                               rhomer@democracyforward.org
                                               kschellenberg@democracyforward.org
                                               wbardwell@democracyforward.org
                                               egoldstein@democracyforward.org
                                               vnugent@democracyforward.org
                                               aperwez@democracyforward.org


                                               * admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

      I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Rachel F. Homer*
Rachel F. Homer
